UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| FRANCISCO OLIVENCIA,<br>    Plaintiff, | : <br> : <br> : <br> : | CASE NO. 3:18-cv-1500 (MPS) |
| v. | : <br> : <br> : | |
| PAPPUSHA, et al.,<br>    Defendants. | : <br> : <br> : | JANUARY 22, 2019 |

**INITIAL REVIEW ORDER**

Plaintiff Francisco Olivencia, currently incarcerated at the Bridgeport Correctional Center in Bridgeport, Connecticut, filed this case under 42 U.S.C. § 1983. He contends that the defendants were deliberately indifferent to his safety in violation of the Eighth Amendment and compelled him to provide information in violation of the First Amendment. The plaintiff seeks damages from the defendants in their individual capacities and injunctive relief from them in their official capacities.

The Court must review prisoner civil complaints and dismiss any portion of the complaint that is frivolous or malicious, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A. This requirement applies to all prisoner filings regardless whether the prisoner pays the filing fee. *Nicholson v. Lenczewski*, 356 F. Supp. 2d 157, 159 (D. Conn. 2005) (citing *Carr v. Dvorin*, 171 F.3d 115 (2d Cir. 1999) (per curiam)). Here, the plaintiff is proceeding *in forma pauperis*.

Although detailed allegations are not required, the complaint must include sufficient facts to afford the defendants fair notice of the claims and the grounds upon which they are based and to demonstrate a plausible right to relief. *Bell Atlantic v. Twombly*, 550 U.S. 544, 555-56 (2007). Conclusory allegations are not sufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

I.  Allegations

The plaintiff is a 27-year old inmate serving a sentence for nonviolent offenses. ECF No. 20, ¶ 8. The Department of Correction has a policy or practice of selecting inmates believed able to provide information useful in investigating suspected violations of prison rules by other inmates. *Id.*, ¶ 21. Correctional officials promise the selected informants special benefits in exchange for information and threaten them with sanctions if the inmates do not provide information. *Id.* Correctional officials promise that any information provided will be kept confidential and promise to protect the informants from harm by other inmates. *Id.*, ¶ 22. Correctional officials are aware that inmates thought to be snitches are at a severe risk of serious injury by other inmates. *Id.*, ¶ 23. The practice is implemented through the Special Intelligence Unit of the Department of Correction. *Id.*, ¶ 25. The meetings with the informants are not recorded or otherwise documented. *Id.*, ¶ 24. The designation of an inmate as an informant and information about investigations the informant is assisting with are shared with officers at other correctional facilities. *Id.*, ¶ 26.

On August 19, 2016, the plaintiff was admitted to Bridgeport Correctional Center and designated as affiliated with the Security Risk Group ("SRG") "Bloods." He was housed in a Restrictive Housing Unit ("RHU") for SRG members. *Id.*, ¶¶ 27-28. SRG units are known to be dangerous areas of any prison because the inmates housed there are actual or suspected SRG members. *Id.*, ¶ 29.

In early September 2016, Officer Pappusha and another officer told the plaintiff that his SRG affiliation and, therefore, his confinement in RHU would be rescinded if the plaintiff became an informant for the Department of Correction. *Id.*, ¶ 30. Officer Pappusha told the plaintiff that he would remain in RHU unless he agreed. He did not explain the dangers in becoming an informant but did promise that any information the plaintiff provided would remain confidential. *Id.*, ¶ 31. Officer Pappusha gave the plaintiff a special PIN to enable the plaintiff to contact him directly by phone to relay confidential information. *Id.*, ¶ 32. The plaintiff provided confidential information about drug and tattoo activity. *Id.*, ¶ 33.

On February 17, 2017, the plaintiff was transferred to Cheshire Correctional Institution ("Cheshire"). Upon his arrival, he was called to an administrative office where he was confronted by Officers Boyd, Perruchio, Kelly, Vargas, and others. *Id.*, ¶ 34. Officers Boyd, Perruchio, Kelly, and Vargas gave the plaintiff a new PIN so he could contact them with confidential information. *Id.*, ¶ 35. They told the plaintiff that he had not provided sufficient information to date and threatened to send him back to RHU and re-affiliate him as an SRG member if he did not provide additional confidential information. *Id.*, ¶ 36. The plaintiff had committed no other actions that would warrant the threatened sanctions. *Id.*, ¶ 37. Officers Boyd, Perruchio, Kelly, and Vargas understood that the plaintiff would be at serious risk of

3

severe injury from other inmates if they returned him to RHU after they had obtained confidential information, or were thought to have obtained confidential information, from the plaintiff. *Id.*, ¶ 38.

After providing confidential information, the plaintiff noticed that other inmates at Cheshire suspected that he was an informant and realized that his safety was in danger. *Id.*, ¶ 39. The plaintiff told Officer Vargas and others that he did not feel safe acting as an informant. Officer Vargas ignored him. He told the plaintiff not to report his fears and implied that, if he did, the plaintiff would be sent back to RHU where he would be injured by other inmates. *Id.*, ¶ 40.

Officer Boyd called the plaintiff to speak with him in the medical unit. Officer Boyd asked the plaintiff why he had not produced sufficient information implicating other inmates. The plaintiff said he had nothing to report. *Id.*, ¶ 41. Officer Boyd told the plaintiff to fabricate evidence if he had no actual evidence to report. He implied that if the plaintiff did not provide sufficient information, he and the other officers would identify the plaintiff as a snitch in front of other inmates, thereby endangering his safety. *Id.*, ¶ 42.

Officers Kelly and Perruchio had the plaintiff moved to South 4 unit, even though they knew that inmates against whom the plaintiff had previously informed were housed in that unit. *Id.*, ¶ 43. The inmates in South 4 suspected that the plaintiff was an informant. Officers Kelly and Perruchio knew or should have known this. *Id.*, ¶ 44. Even so, Officers Kelly and Perruchio told the plaintiff to continue acting as an informant. *Id.*, ¶ 45.

The plaintiff thought that one particular inmate in South 4 believed he was a snitch. The plaintiff feared for his safety. When the plaintiff reported his fear of violence to Officer

4

Perruchio, the other inmate was moved to a different housing unit. This action ensured that the inmates remaining in the housing unit would assume that the plaintiff had reported the other inmate to correctional officials. *Id.*, ¶ 46. Inmates at Cheshire put a "green light" out for the plaintiff, meaning they invited other inmates to physically assault him. *Id.*, ¶ 47. The plaintiff reported the green light to Officer Boyd. The plaintiff was transferred to MacDougall-Walker Correctional Institution on August 11, 2017, but was returned to Cheshire on September 29, 2017. *Id.*, ¶ 49.

Upon his return, Officer Boyd ordered the plaintiff to continue providing confidential information about other inmates. He ignored the plaintiff's statements that he feared for his safety if he continued as an informant. *Id.*, ¶ 50. Inmates at Cheshire put a second green light out on the plaintiff. *Id.*, ¶ 51. In early November 2017, the plaintiff was beaten by an inmate who suspected that the plaintiff was a snitch. *Id.*, ¶ 52.

On November 30, 2017, the plaintiff was transferred to Garner Correctional Institution. *Id.*, ¶ 53. Upon his arrival, Officers Kenny, Coheleo, and other officers told the plaintiff that they expected him to provide information about inmates. They ignored the green lights and recent attacks and told the plaintiff to produce evidence by any means including fabrication. *Id.*, ¶ 54.

The plaintiff told Officer Kenny that he did not want to serve as an informant. He stated that he had been beaten for being a suspected snitch because of the actions of other defendant correctional officers. *Id.*, ¶ 55. Officers Kenny and Coheleo ignored the plaintiff. They said that if the plaintiff did not continue as an informant, they would "take" his parole and he would go back to SRG. They reminded the plaintiff that SRG would be dangerous because the inmate

5

from South 4 who had suspected the plaintiff of being a snitch had been moved to that unit. *Id.*, ¶ 56.

On May 7, 2018, Officer Kenny ordered the plaintiff to provide evidence implicating two specific inmates, both serving lengthy sentences for murder, in tattooing other inmates. *Id.*, ¶ 57. Officer Kenny told the plaintiff that he had singled out these inmates because they had filed lawsuits relating to their confinement. *Id.*, ¶ 58. When plaintiff was reluctant, Officer Kenny and another officer told the plaintiff that he must do what he was told if he wanted to "keep" his parole. *Id.*, ¶ 59. Defendant Kenny said he did not care if other inmates suspected that the plaintiff was a snitch. *Id.*, ¶ 60.

The plaintiff entered protective custody because he feared for his safety. As a result, on June 20, 2018, the plaintiff was transferred back to Cheshire. *Id.*, ¶ 61. While the plaintiff was in protective custody and refusing to provide information, the defendant officers realized that the plaintiff was no longer useful as a source of information. *Id.*, ¶ 62. Officer Brewer told inmates in the recreation yard at Cheshire that the plaintiff was a snitch. *Id.*, ¶ 63. This statement led the inmates in general population at Cheshire and other correctional facilities to believe that the plaintiff was an informant. *Id.*, ¶ 64.

II. <u>Analysis</u>

The plaintiff names nine defendants in his amended complaint: Commissioner-Designate Rollin Cook, Lieutenant Pappusha, Christopher Kelly, Lieutenant Boyd, Officer Perruchio, Captain Kenny, Officer Vargas, Officer Coheleo, and Officer Brewer. Defendant Cook is named in his official capacity only. All other defendants are named in individual and official capacities. The plaintiff alleges that Officers Pappusha, Boyd, Perruchio, Kelly, Vargas, Kenny, and

6

Coheleo forced him to act as a snitch and provide truthful or fabricated information against other inmates and that Officer Brewer told other inmates that he was a snitch. He asserts claims for violation of his rights under the First and Eighth Amendments.

    A.    <u>First Amendment Claims</u>

The Second Circuit has held that prisoners have First Amendment rights to refuse to serve as a prison informant and to refuse to provide false information. *Burns v. Martuscello*, 890 F.3d 77, 89 (2d Cir. 2018). The court explained that no legitimate prison objective could be served by forcing an inmate to provide false information. *Id.* In addition, the court explained that "[i]f a prison snitch is found out, then the inmate's forced service as an informant may well prompt life-threatening physical harm. And even if the informant is never unmasked, [he] must shoulder the burden of the knowledge that, if [his] status as a snitch ever does come to light, violence may well befall [him]." *Id.* at 91. Thus, the court held that "forcing an inmate to serve as an informant on an ongoing basis is not reasonably related to a legitimate penological purpose—namely safety." *Id.* The plaintiff's First Amendment claim will proceed for damages against defendants Pappusha, Boyd, Perruchio, Kelly, Vargas, Kenny, and Coheleo in their individual capacities and for injunctive relief against these defendants and defendant Cook in official capacities.

Although the plaintiff includes Officer Brewer as one of the "Corrections Officer Defendants" referenced in this claim, the only allegation against Officer Brewer is that he identified the plaintiff to other inmates as a snitch. As the plaintiff does not allege facts suggesting that Officer Brewer forced him to act as a snitch or provide false information, there are no facts supporting a plausible First Amendment claim against Officer Brewer. Accordingly,

7

any First Amendment claim against Officer Brewer is dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

   B.   Eighth and Fourteenth Amendment Claims

The plaintiff states that he asserts Eighth Amendment claims for deliberate indifference to safety against defendant officers Pappusha, Boyd, Perruchio, Kelly, Vargas, Kenny, Coheleo, and Brewer for damages in individual capacity and against all defendants for injunctive relief in official capacity.

The Department of Correction website shows that the plaintiff was sentenced on February 15, 2017. www.ctinmateinfo.state.ct.us/detailsupv.asp?id_inmt_num=360284 (last visited Jan. 17, 2019). Thus, from August 19, 2016, through February 16, 2017, his initial period of confinement at Bridgeport Correctional Center, the plaintiff was a pretrial detainee. His claims against defendant Pappusha, therefore, are cognizable under the Fourteenth, not the Eight, Amendment. *See Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017) (rights of pretrial detainees are considered under the Fourteenth Amendment while rights of sentenced prisoners are considered under the Eighth Amendment).

In *Kingsley v. Hendrickson*, ___ U.S. ___, 135 S. Ct. 2466, 2473 (2015), the Supreme Court held that a pretrial detainee asserting a claim for excessive use of force need only meet an objective standard. In *Darnell*, the Second Circuit held that the reasoning from *Kingsley* should be applied to other inmate claims involving deliberate indifference, including claims for deliberate indifference to safety. 849 F.3d at 33 n.9. The court held that a "pretrial detainee must prove that the defendant-official acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the

pretrial detainee even though the defendant-official knew, or should have known, that the condition imposed an excessive risk to health or safety." *Id.* at 35.

The plaintiff alleges that Officer Pappusha promised that the plaintiff's SRG affiliation would be rescinded and he would be transferred from the SRG unit in RHU if he became an informant. Officer Pappusha did not explain the dangers the plaintiff faced from other inmates by becoming an informant. This allegation is sufficient to state a plausible claim that Officer Pappusha acted intentionally to subject the plaintiff to the dangerous role of confidential informant.

The plaintiff alleges that Officer Brewer identified the plaintiff as an informant to other inmates and that Officers Boyd, Perruchio, Kelly, Vargas, Kenny, and Coheleo subjected him to the risk of serious harm by forcing him to become a confidential informant and to continue after his role was discovered by other inmates. These claims are cognizable under the Eighth Amendment as claims for deliberate indifference to safety.

To state a claim for deliberate indifference to safety, the plaintiff must allege facts showing that he is confined under conditions that pose a substantial risk of serious harm and that the defendants both knew that the plaintiff faced a substantial risk of serious harm and failed to take reasonable measures to abate that harm. *See Farmer v. Brennan*, 511 U.S. 825, 834, 837 (1994); *Campbell v. Gardiner*, No. 12-CV-6003P, 2014 WL 906160, at *3 (W.D.N.Y. Mar. 7, 2014).

Courts within the Second Circuit have recognized that labeling a prisoner as a snitch violates the Eighth Amendment. *See Campbell*, 2014 WL 906160, at *4 (citing cases). In addition, in *Burns*, the Second Circuit acknowledges that other courts have so held. 890 F.3d at

9

In most Eighth Amendment cases, however, there is some allegation of physical injury as a result of being labeled a snitch by correctional staff. *See Campbell*, 2014 WL 906160, at *4 (citing cases). The plaintiff alleges only that defendant Brewer called him a snitch before other inmates. The plaintiff alleges that this occurred after he entered protective custody and does not allege that he suffered any injury attributable to the statement. However, the Court will permit this Eighth Amendment claims to proceed to enable the plaintiff to further develop the record regarding his claim against Officer Brewer.

The plaintiff alleges that the other defendants were deliberately indifferent to his safety because they would not permit him to stop being an informant and failed to take reasonable measures to protect him from discovery as a confidential informant by other inmates, and to protect him once other inmates suspected that he was an informant. As a result, the plaintiff was assaulted by at least one inmate. These allegations are sufficient to state plausible Eighth Amendment claims.

III.    Conclusion

The First Amendment claim against defendant Brewer is **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1). The case will proceed on the following claims: the First Amendment claims against defendants Pappusha, Boyd, Perruchio, Kelly, Vargas, Kenny, and Coheleo for damages in their individual capacities; the First Amendment claims against these defendants and defendant Cook in their official capacities for injunctive relief; the Fourteenth Amendment claim against defendant Pappusha in his individual capacity for damages; the Fourteenth Amendment claims against defendants Cook and Pappusha in their official capacities for injunctive relief; the Eighth Amendment claims against defendants Boyd, Perruchio, Kelly,

Vargas, Kenny, Coheleo, and Brewer in their individual capacities for damages; and the Eighth Amendment claims against these defendants and defendant Cook in their official capacities for injunctive relief.

The Court enters the following orders:

(1) **The Clerk shall** contact the Department of Correction Office of Legal Affairs to ascertain the service or current work address for defendants Pappusha, Boyd, Perruchio, Kelly, Vargas, Kenny, Coheleo, and Brewer, mail a waiver of service of process request packet containing the Amended Complaint to each defendant at the address provided within **twenty-one (21) days** of this Order, and report to the court on the status of those waiver requests on the thirty-fifth day after mailing. If any defendant fails to return the waiver request, the Clerk shall make arrangements for in-person service by the U.S. Marshals Service on the defendant in his or her individual capacity and the defendant shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

(2) **The Clerk shall** prepare a summons form and send an official capacity service packet to the U.S. Marshal Service. The U.S. Marshal is directed to effect service of the Amended Complaint on all defendants in their official capacities at the Office of the Attorney General, 55 Elm Street, Hartford, CT 06141, within **twenty-one (21) days** from the date of this order and to file a return of service within thirty (30) days from the date of this order.

(3) **The Clerk shall** send the plaintiff a copy of this Order.

(4) **The Clerk shall** send a courtesy copy of the Amended Complaint and this Order to the Connecticut Attorney General and the Department of Correction Office of Legal Affairs.

(5) The defendants shall file their response to the amended complaint, either an

answer or motion to dismiss, within **sixty (60) days** from the date the waiver forms are sent.  If they choose to file an answer, they shall admit or deny the allegations and respond to the cognizable claim recited above.  They also may include all additional defenses permitted by the Federal Rules.

(6) Discovery, pursuant to Federal Rules of Civil Procedure 26 through 37, shall be completed within **seven months (210 days)** from the date of this order.  Discovery requests need not be filed with the court.

(7) All motions for summary judgment shall be filed within **eight months (240 days)** from the date of this order.

(8) Pursuant to Local Civil Rule 7(a), a nonmoving party must respond to a dispositive motion within twenty-one (21) days of the date the motion was filed.  If no response is filed, or the response is not timely, the dispositive motion can be granted absent objection.

(9) If the plaintiff changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)2 provides that the plaintiff MUST notify the court.  Failure to do so can result in the dismissal of the case.  The plaintiff must give notice of a new address even if he is incarcerated.   The plaintiff should write PLEASE NOTE MY NEW ADDRESS on the notice.  It is not enough to just put the new address on a letter without indicating that it is a new address.  If the plaintiff has more than one pending case, he should indicate all of the case numbers in the notification of change of address.  The plaintiff should also notify the defendant or the attorney for the defendant of his new address.

(10) The plaintiff shall utilize the Prisoner Efiling Program when filing documents with the court. The plaintiff is advised that the Program may be used only to file documents with

the court. Local court rules provide that discovery requests are not filed with the court. D. Conn. L. Civ. R. 5(f). Therefore, discovery requests must be served on defendants' counsel by regular mail.

**SO ORDERED** this 22nd day of January 2019 at Hartford, Connecticut.

/s/
Michael P. Shea
United States District Judge